# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                            Case No. 25-CR-181

ISAIAS R. CUPINO,

        Defendant.

## ORDER GRANTING RULE 33 MOTION FOR NEW TRIAL

On April 23, 2026, a jury found Isaias R. Cupino, a family physician, guilty of three counts of Production of Child Pornography, one count of Transportation of Child Pornography, and one count of Possession of Child Pornography. The jury returned verdicts of not guilty on two additional counts of Production of Child Pornography and a second count of Possession of Child Pornography. The case is before the court on the defendant's Motion for a New Trial pursuant to Fed. R. Crim. P. 33. Rule 33 states: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Dr. Cupino contends that the court erred in admitting evidence that was not relevant and unduly prejudicial. Having considered the matter more fully and in light of the totality of evidence at trial, the court agrees. Dr. Cupino's motion will therefore be granted.

## BACKGROUND

Dr. Cupino was a 65-year-old family practice physician at the time of his arrest on August 26, 2025. Seven of the eight counts charged in the Superseding Indictment involved visual depictions of Dr. Cupino's son, identified in the Indictment as Child Victim-1, who was born of a

surrogate mother in October of 2023. The alleged child pornography consisted of digital pictures or movie files exhibiting the child's genitals, pubic area, and/or anus. The earliest was taken on or about October 18, 2023, when the child was less than a month old and the latest on or about July 12, 2025, when the child was still less than two. Dr. Cupino was alleged to have used an Apple iPhone to produce digital pictures and movie files depicting the lascivious exhibition of Child Victim-1's genitals, pubic area, and/or anus.

The charges arose out of the investigation of a CyberTip sent by Facebook to the National Center for Missing and Exploited Children (NCMEC). Dr. Cupino uploaded some of the videos to the private/non-public portion of a Facebook account he created and was administering in Child Victim-1's name. Dr. Cupino testified at trial that he took these and thousands of other digital photos and videos because he wanted his son to have a record of their life together since, given their age difference, he did not expect to be alive when his son reached adulthood. Because of the privacy settings on the account, the uploaded content could not be viewed by others, and there is no evidence Dr. Cupino ever sold or attempted to share the alleged child pornography with others. In any event, Facebook flagged the upload and sent a CyberTip to NCMEC, which then notified law enforcement. Law enforcement determined the upload originated from Dr. Cupino's residence in Oconto Falls, Wisconsin, which in turn led to the execution of a warrant for Dr. Cupino's home and seizure of his electronic devices.

The forensic analysis of a Western Digital hard drive seized from Dr. Cupino's home revealed images of another child, Child Victim-2 (a prepubescent female), exhibiting her pubic area and anus. These images formed the basis of the eighth count of the Indictment. At trial it was revealed that Child Victim-2 was Dr. Cupino's now adult daughter. The photos had apparently been taken years earlier, and at least one of the depictions of the prepubescent girl appeared to

2

have been taken in a family setting by someone other than Dr. Cupino. The jury acquitted Dr. Cupino of this count, as well as two of the production counts involving Child Victim-1.

In addition to the images and videos that form the basis of the eight counts in the indictment, the forensic analyst also found two series of images and videos on Dr. Cupino's iPhone that the government sought leave to introduce as evidence at trial. The first series of images and videos showed Dr. Cupino's and Child Victim-1's interactions with a life-sized female adult sex doll (with anatomical breasts, nipples, and a vaginal opening) that Dr. Cupino had ordered prior to the birth of his son. Some of these videos documented the arrival of the doll in a shipping crate and Dr. Cupino's unpacking of it, complete with an accompanying narrative where he states "she's not in a cage anymore" and describes the features of the doll. One of the videos of Child Victim-1 interacting with the doll shows Dr. Cupino holding Child Victim-1 in his arms as he leans forward to kiss the doll's face. Another shows the child kissing and stroking the doll's legs. In one video, the child is shown standing between the robed doll's legs making movements that the government described as "thrusting his pelvis as if simulating sexual intercourse." Dkt. No. 31 at 6. The second series of images and videos are of Dr. Cupino holding Child Victim-1 and performing open-mouth kisses. In some, Dr. Cupino expels a liquid from his mouth into Child Victim-1's mouth and in others he extends his tongue for Child Victim-1 to suck on.

Prior to trial, the government and defense sought pretrial rulings on the admissibility of both the "doll series" of videos and the "kissing series" of videos. Upon viewing the videos in isolation and considering the briefs of the parties and the cases cited therein, the court concluded that both series of videos, though prejudicial, were relevant and that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Accordingly, the court ruled the evidence admissible. It is that decision that Dr. Cupino's motion for a new trial challenges.

## ANALYSIS

In its pretrial ruling that the challenged evidence was admissible, the court recognized that the key issue in the case was whether the depictions of the alleged victims' genitals, pubic area, and/or anus were lascivious and found the evidence directly relevant to that issue. The common element in each of the charges was that material produced, transported, or possessed by Dr. Cupino depicted a child engaged in "sexually explicit conduct." 18 U.S.C. §§ 2251(a), 2252(a). The statute defines "sexually explicit conduct" as "actual or simulated" —

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the anus, genitals, or pubic area of any person.

18 U.S.C. § 2256(a)(2)(A). None of the depictions at issue involved the alleged victims engaging in any of the behaviors described in § 2256(a)(2)(A)(i) through (iv). It was the government's contention that the depictions of the alleged child victims that formed the basis of the charges in the indictment constituted the "lascivious exhibition of the anus, genitals, or pubic area" of the two children within the meaning of § 2256(a)(2)(A)(v).

In determining whether the exhibition of the anus, genitals, or pubic area of a child is lascivious, the Seventh Circuit has instructed that the factfinder must look first to the images or videos themselves. *United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016). There must be an exhibition of the anus, genitals, or pubic area, meaning that the nude anus, genitals, or pubic area must be visible. *Id.* However, "[t]here is no requirement in the statute that the creator zoom in on the pubic area. Nor is there a requirement that the pubic area be the sole focus of the depiction."

4

*Id.* But, as the court has repeatedly explained, mere nudity is not enough. *Id.* at 524; *see also United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008) ("more than nudity is required to make an image 'lascivious'"); *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) ("more than nudity is required to render a photograph lascivious"). Otherwise, "the statute would criminalize a mother taking a picture of her child in the bathtub or a doctor taking a picture of a minor patient's pubic area for a medical diagnosis." *Miller*, 829 F.3d at 525. "In both of those situations," *Miller* explained, "the creator may be intending to take a photograph of an "exhibition" of the minor's pubic area, but not a 'lascivious' one." *Id.* at 525–26.

In this case, there is no doubt that the depictions that are alleged to constitute child pornography exhibit the nude anus, genitals, or pubic area of the alleged child victims. In fact, in some of the videos, Dr. Cupino, the creator of the videos, actually zoomed in on the genitals of Child Victim-1 and clearly made the child's penis the focus. But even this is not enough to make the depiction lascivious. "[L]ascivious means 'tending to arouse sexual desire.'" *Id.* at 524 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY). Thus, the court has held that "determining lasciviousness requires consideration of multiple factors and must be decided individually in 'each case, applying common sense.'" *United States v. Porter*, 114 F.4th 931, 936 (7th Cir. 2024) (quoting *Miller*, 829 F.3d at 525). "While the content of the images themselves must remain the primary focus in determining lasciviousness, subjective intent—particularly of the *creator*—is a relevant, and quite probative consideration." *Id.* at 937 (cleaned up) (emphasis in original). "[A] lascivious display is one that calls attention to the genitals or pubic area *for the purpose of eliciting a sexual response in the viewer*." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011).

Because the purpose or intent of the viewer or creator is a relevant consideration in deciding whether a depiction is lascivious, evidence that tends to show such intent or purpose is relevant in

a child pornography prosecution. *Miller* provides an illustration of how this principle has been applied. In that case, the defendant challenged his conviction under § 2251(a) on the grounds that the videos he produced were not "lascivious" and instead constituted "mere nudity." *Id.* at 523. The defendant had cut a hole in the drywall of his basement utility room and secretly recorded minors showering and using the toilet in his basement bathroom. Although the defendant argued the videos were not lascivious and showed "simply naked teenage minor girls," the court noted that there were also videos introduced at trial of Miller engaged in intercourse with adult females, a video of a nude adult female in the bathroom, and a video of Miller masturbating while watching homemade pornography. "These videos," the court held, "support the district court's finding that the filming of these nude minors was for the purpose of sexual arousal." 829 F.3d at 526.

In concluding that the doll video series was relevant to the issue of whether the depictions of Child Victim-1 were lascivious, the court noted that life-sized sex dolls are used to act out sexual fantasies. While Dr. Cupino may have obtained the doll to act out his own sexual fantasies, the court reasoned that "the fact that he repeatedly videoed Child Victim-1 interacting with the doll and seemed to encourage the interaction gives rise to the inference that he was trying to teach, or model for the child, sexual conduct." If that were the case, the court concluded, "a jury could conclude that he believes that infants and toddlers can be taught to engage in sexual behavior and thereby provide the context in which the jury could further conclude that the images of Child Victim's anus, genitals, and pubic area he produced with his iPhone were intended to be sexually suggestive or arousing." Dkt. No. 52 at 5.

Having now viewed the doll videos in the context of the evidence as a whole, the court now finds that both its assessment of the evidence and its conclusion was in error. While the child did approach and touch parts of the doll, the doll was robed at the time and there was no

6

recognizable sexual conduct. Moreover, even if the child was exhibiting "sexual" behavior, that would say nothing about whether Dr. Cupino's video recordings of the child's genitals or anus were intended for his or another's sexual arousal. The video recordings introduced at trial were only a few of the thousands of digital recordings Dr. Cupino had taken of his son over the course of his short life. And unlike the non-child pornography videos the court found relevant in *Miller*, the doll videos in this case do not suggest Dr. Cupino was sexually aroused or seeking sexual arousal from the allegedly lascivious videos of his son. His manner seemed calm, even playful, as he recorded his son. I therefore conclude that the doll series of videos are irrelevant and should not have been admitted. They may raise questions as to his fitness as a parent, but they do not suggest he intended the depictions of his son's genitals and anus to be sexually arousing.

The same is true of the kissing video series. As to that evidence, the court noted in its original decision that while kissing one's child can be a sign of fatherly affection, it can also serve as a prelude to sexual activity. The kind of full, open-mouth kissing Dr. Cupino engaged in with Child Victim-1, the court observed, appears to resemble, if anything, the latter. The court continued, noting the additional features, including expelling liquid from his mouth into the mouth of Child Victim-1 and having Child Victim-1 suck on his tongue only strengthen the inference that Dr. Cupino was attempting to teach, even program, the child to engage in sexual activity. The court concluded that again such evidence was necessary to provide the context for the jury to determine whether the images and videos exhibiting the children's anus, genitals, and pubic area are lascivious and thus constitute child pornography.

Here, again, the court concludes that its reasoning was flawed. To be sure, the behavior shown in the kissing videos is concerning. At trial, Dr. Cupino's sisters testified it was not unusual within the Filipino culture or, at least, in their family, to engage in such behavior. But even if that

7

is not true, the kissing behavior does not show that Dr. Cupino intended the separate video recordings he took of his naked son after removing him from the shower were intended to be sexually arousing. Again, there is nothing in those videos that suggests that Dr. Cupino was sexually aroused in seeing his son naked. Even if, as the court surmised, such evidence strengthened "the inference that Dr. Cupino was attempting to teach, even program, the child to engage in sexual activity," this would not make it relevant to the issue of whether the videos depicting the child's genitals were intended to be sexually arousing. It would certainly warrant concern over Dr. Cupino's fitness as a parent, but that does not mean he intended the naked pictures of his son to be sexually arousing.

For the reasons set forth above, the court concludes that the doll series and kissing series of video recordings were not relevant and it was error to admit them. They were also highly prejudicial. While the court gave a curative instruction and is confident the jury did its best to follow it, the court is satisfied that a new trial should be granted in the interest of justice. The question of what constitutes the lascivious exhibition of a child's genitals, anus, or pubic area is both legally and factually confusing. As Judge Easterbrook noted in his concurring opinion in *United States v. Donoho*, "*Miller* defines 'lascivious exhibition of the genitals' in a way that is hopelessly vague, leaving judges, prosecutors, jurors, and, most important, photographers, unable to determine what is and what is not lawful." 76 F.4th 588, 601 (7th Cir. 2023) (Easterbrook, J., concurring). This is especially so where the defendant is a physician who has been physically examining children on a daily basis as part of his medical practice for decades, as well as the father of the alleged victim. By allowing such irrelevant and highly prejudicial evidence at trial, the court is concerned that Dr. Cupino was denied a fair trial. It is for this reason that his Rule 33 motion must be granted.

8

**CONCLUSION**

This decision should not be read as condoning the behavior of Dr. Cupino. Buying a sex doll for companionship is, as Dr. Cupino acknowledged, the act of a lonely and depressed man. And choosing, as a man in his sixties, to bring a child into the world by contracting with a fertility clinic to purchase an anonymous woman's ova, have them fertilized with his own sperm, and then implanting the most promising "specimen" in the womb of a surrogate mother, all because he wants a second chance at fatherhood, would strike many as an act of supreme selfishness. But because there are no laws against those actions, these are choices men are free to make in this "Brave New World" in which we find ourselves, as dehumanizing as they may appear to some.

The specific behaviors depicted in the challenged video evidence raise a separate question that the Oconto County Child Protection Services agency will need to address. Exposing his child to his sex doll and engaging in the kind of open mouth activity depicted in the "kissing" series of videos are behaviors that call into question Dr. Cupino's fitness as a father. But these behaviors have no tendency to show that he was or intended to be sexually aroused by the digital videos exhibiting his son's genitals or anus, and that was the issue in this case. Under Rule 401, as well as Rule 403, of the Federal Rules of Evidence, this evidence therefore should not have been admitted. It was error to allow it. Accordingly, Dr. Cupino's Rule 33 Motion for a New Trial is **GRANTED**. The clerk is directed to set this matter on the court's calendar for a telephone conference with counsel to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of June, 2026.

William C. Griesbach
United States District Judge

9